IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| D.K. and A.K., by their guardians and next best friends MELVIN KELLET and CHERYL KELLET; ANOLANI COON, ANELA COON, SUE GOODRIDGE, ANUHEA COON, by their guardian and next friend PATRICIA COON; C.H., by her guardian and next friend J.H.; KYLE SCHAFFNER and AVERY SCHAFFNER, by their guardian and next friend CRYSTAL SCHAFFNER; JERICHO GARRY and FRANCES GARRY, by their guardian and next friend SUE GARRY,<br><br>            Plaintiffs,<br><br>      vs.<br><br>LINDA LINGLE, in her official capacity as Governor of the State of Hawaii; PATRICIA HAMAMOTO, in her official capacity as Superintendent of the State of Hawaii Department of Education; and GARRETT TOGUCHI, in his official capacity as Board of Chairperson of the State of Hawaii Board of Education,<br><br>            Defendants.<br>_____ | CV. NO. 09-00507 DAE-LEK |

ORDER DENYING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER

On October 22, 2009, the Court heard Plaintiffs' Motion for a
Temporary Restraining Order.  Eric A. Seitz, Esq., Della A. Belatti, Esq. and
Ronald N.W. Kim, Esq., appeared at the hearing on behalf of Plaintiffs; Attorney
General Mark Bennett and Deputies Attorney General Holly T. Shikada and
Deirdre Marie-Iha appeared at the hearing on behalf of Defendants.  After
reviewing the motion and the supporting and opposing memoranda, as well as the
arguments presented by counsel at the hearing, the Court DENIES Plaintiffs'
Motion.

BACKGROUND

On September 19, 2009, the Hawaii State Board of Education and the
Hawaii Teachers' Association ("HTA") entered into a retroactive contract which
required 17 furlough days to be taken from instructional time during the 2009-2010
school year.  The contract was ostensibly reached due to Governor Linda Lingle's
effort to balance the state budget in light of the recent economic downturn.

The contract was recently ratified by the HTA.  An altered school
calendar was released, identifying Friday, October 23, 2009, as the first of 17
furlough days.  The remaining 16 furlough days are scheduled for Fridays

2

throughout the 2009-2010 school year, but not for holidays or other non-class days

("Furlough Fridays").  The result is that students enrolled in general education

classes in standard public schools will attend school for 163 days, rather than 180.[1]

Plaintiffs brought the instant action for declaratory and injunctive

relief on behalf of public school students who are subject to the Furlough Fridays.

Plaintiffs allege six causes of action: (1) breach of contract for failure to provide

educational services promised to students; (2) "discriminatory impact" on

protected classes, presumably under the Equal Protection Clause of the Fourteenth

Amendment[2]; (3) violation of the Individuals with Disabilities Education Act

("IDEA"); (4) violation of Section 504 of the Rehabilitation Act of 1973; (5)

violations of equal protection and the IDEA with respect to students in public

charter schools; and (6) deprivation of rights guaranteed by federal law and the

United States Constitution pursuant to 42 U.S.C. § 1983.

---

[1]According to the declaration of one of the Plaintiffs, children in schools with a multi-track (i.e., year-round) calendar have "approximately 20 fewer school days than regular public schools."  (Decl. of J.H. ¶ 5.)  It appears, therefore, that Furlough Fridays would result in students at these schools attending class for 143 days.  (Id. ¶ 6.)

[2]There is no "discriminatory impact" theory under the Fourteenth Amendment; rather, the Court construes Plaintiffs' complaint as alleging "disparate impact" under long-standing equal protection principles.  See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977).

Less than forty hours before the October 23, 2009 first Furlough

Friday was to begin, Plaintiffs filed the instant motion for a temporary restraining

order.  (Doc. # 4.)  The motion requests that this Court prevent Defendants from

implementing Furlough Fridays in order "to preserve the status quo[3] and protect

[students'] invaluable rights from irreparable harm."  (Memorandum in Support

("Mem.") at 24-25.)  On October 22, 2009, Defendants filed a consolidated

opposition, presenting arguments in response to the instant motion as well as a

similar motion in a related case, N.D., et al. v. Department of Education, Civ. No.

09-505.  (Doc. # 6.)

STANDARD OF REVIEW

"The standards for granting a temporary restraining order and a

preliminary injunction are identical."  Haw. County Green Party v. Clinton, 980 F.

Supp. 1160, 1164 (D. Haw. 1997); cf. Stuhlbarg Int'l Sales Co. v. John D. Brush &

Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a

preliminary injunction is "substantially identical" to an analysis of a temporary

restraining order).  "[I]njunctive relief is an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter

_____

[3]The Court notes that requiring schools to open tomorrow would not, as
Plaintiffs contend, preserve the status quo.  The current school calendar contains
the Furlough Fridays and, as such, is the status quo.

4

v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 376 (2008).  In order

to obtain a preliminary injunction, the moving party must demonstrate "that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in his favor, and that

an injunction is in the public interest."  Id. at 365 (citing Munaf v. Geren, 128 S.

Ct. 2207, 2218-19 (2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987);

Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)); see also Stormans,

Inc. v. Selecky, 571 F.3d. 960, 978 (9th Cir. 2009) (applying heightened standard

mandated by Winter).[4]

---

[4]     In their moving papers, Plaintiffs cite several cases decided prior to the
Supreme Court's decision in Winter, asking this Court to apply the sliding scale
analysis previously used by the Ninth Circuit in determining whether injunctive
relief is appropriate. The Ninth Circuit has recently emphasized that the sliding
scale, or continuum, analyses are no longer controlling to the extent that they
suggest a lesser standard.  See Am. Trucking Assocs., Inc. v. City of Los Angeles,
559 F.3d 1046, 1052 (9th Cir. 2009).  Indeed, the Ninth Circuit's most recently
published cases underscore the requirement of Winter's four-prong test.  See Sierra
Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009); Stormans, 571 F.3d at
977-78; Marlyn Nutraceuticals, Inc. v. Mucos Pharma GMGH & Co., 571 F.3d
873, 877 (9th Cir. 2009).

<u>DISCUSSION</u>

I.    <u>Injunctive Relief Under the IDEA</u>

      Plaintiffs claim as a threshold matter that they are entitled to the requested injunction because of the injunctive nature of the "stay-put provision" in the IDEA.  <u>See</u> 20 U.S.C. § 1415(j).  The stay-put provision mandates that students with disabilities remain in their then-current educational placement during the pendency of a Due Process Complaint, including any appeals in federal court.  <u>Id.</u> Plaintiffs rely on language in a recent Ninth Circuit decision, which states that motions for stay put function "as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief."  <u>Joshua A. v. Rocklin Unified School Dist.</u>, 559 F.3d 1036, 1037 (9th Cir. 2009).

      Plaintiffs misunderstand the holding of <u>Joshua A</u>.  In that case, the Ninth Circuit was considering whether the automatic protections of the stay put provision, which are invoked when a parent files a Due Process Complaint regarding the development or content of an IEP, continue throughout the duration of the appellate process.  <u>Id.</u> at 1037-40.  The Ninth Circuit was not presented with nor did it rule that plaintiffs have an automatic right to a separate injunction in circumstances such as these independent of the <u>Winter</u> test.  Instead, <u>Joshua A.</u>

stands for the proposition that stay put merely ensures that the child is kept at his or her then-current placement so that the due process procedure articulated by the IDEA can proceed.

Here, the Plaintiffs with disabilities[5] and their parents are not seeking to invoke stay put.  It appears they have already done so.  (Mem. at 12.)  Rather, they are asking this Court to require DOE to enforce the full magnitude of their placements that are being maintained under stay put.  This is a procedural distinction with a difference and the Court, therefore, rejects Plaintiffs' argument.

II.   The Requested Injunction

As described above, in order to obtain the extraordinary remedy of injunctive relief, a plaintiff must demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm; (3) the balance of equities tips in his favor; and (4) the public interest weighs in favor of injunctive relief.  See Winter, 129 S. Ct. at 365.  In the first instance, the Court is not persuaded that Plaintiffs have demonstrated a likelihood of success on the merits with respect to several of their claims.[6]  Plaintiffs first cause of action, for breach of contract, on its face

_____

[5]Not all of the Plaintiffs in this case are students with disabilities.

[6]The Court emphasizes that it expresses no opinion on the ultimate strength of Plaintiffs' claims.  The Winter test, however, does require the Court to make a

(continued...)

7

appears to be untenable for lack of any contract, agreement, or accord, either

implied or express.  See e.g., Kemp v. Child Support Enforcement Agency, 141

P.3d 1014, 1038 (Haw. 2006).  Moreover, Plaintiffs' equal protection arguments

face the considerable obstacle of proving discriminatory intent, as the furlough

decision is facially neutral.  See Arlington Heights, 429  U.S. at 265; accord

Comm. Concerning Cmty. Improvement v. City of Modesto, Nos. 07-16715,

07-17407, --- F.3d ---, 2009 WL 3208728, at *7 (9th Cir. Oct. 8, 2009).  Finally,

although there appears to be at least some failure to abide by the express provisions

of students' IEPs, this Court will need sufficient time to assess whether Plaintiffs'

claims for violations of the IDEA can succeed.  See Van Duyn ex rel. Van Duyn v.

Baker School Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007) (holding that only a

material failure to implement an IEP violates the IDEA).

        Even assuming *arguendo* that Plaintiffs could demonstrate a

likelihood of success on the merits, however, this Court finds that the balance of

the equities tips sharply in favor of Defendants.  In assessing a motion for

injunctive relief, this Court must "'balance the competing claims of injury and

must consider the effect on each party of the granting or withholding of the

---

[6](...continued)
preliminary assessment based on the information provided at this time.

requested relief.'"  <u>Winter</u>, 129 S. Ct. at 376 (quoting <u>Amoco Prod. Co. v. Village of Gambell, AK,</u> 480 U.S. 531, 542 (1987)).

      Although the Court understands the concerns that educators and parents share regarding the education of this State's children, a restraining order would not, as Plaintiffs claim, "only cause Defendants minor inconvenience." (Mem. at 23.)  A temporary restraining order from this Court would require Defendants to inform and mobilize in excess of 185,000 students and tens of thousands of teachers, administrators, and staff, all within less than seventeen hours.  Such a request is logistically impossible and would inevitably lead to chaos and confusion.  The Court does not believe such hasty response would benefit the students in any discernable way.  Thus, although the public certainly shares a profound interest in the education of its children, the Court finds that issuing a temporary restraining order requiring schools to open tomorrow would constitute an unrealistic and undue burden on Defendants.  <u>See</u> <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994) (mandatory injunction, as in the case here, is "particularly disfavored" and "the district court should deny relief unless facts and the law clearly favor the moving party") (internal quotations omitted).

      Accordingly, this Court DENIES Plaintiffs' motion for a temporary restraining order.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Plaintiffs' Motion for

a Temporary Restraining Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 22, 2009.



_____
David Alan Ezra
United States District Judge

<u>D.K. and A.K., et al. v. Lingle, et al.</u>, Civ. No. 09-00507 DAE-LEK; ORDER
DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER